

FILED

JUN 1 1 2014

UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF CALIFORNIA

UNITED STATES BANKRUPTCY COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| In re | Case No. 07-90770-E-7 |
| BELLA VISTA BY PARAMONT, LLC, | |
| Debtor. | |
| GARY FARRAR, Chapter 7 Trustee, | Adv. Proc. No. 08-9107 |
| Plaintiff, | |
| v. | |
| WARDA & YONANO, a Limited Liability Partnership; et al., | |
| Defendants. | |

**SUPPLEMENTAL FINDING AFTER REMAND**
**AMOUNT OF FRAUDULENT CONVEYANCE**

On December 9, 2008, Gary Farrar ("Plaintiff-Trustee"), in his capacity as the Chapter 7 Trustee for the bankruptcy estate of Bella Vista by Paramount, LLC ("Bella Vista") commenced this Adversary Proceeding against Warda & Yonano, LLP ("W&Y"), J.C. Williams Company ("JCW"), JCW-Cypress Home Group, LP ("JCW-Cypress"), and John C. Williams ("Williams"). The Complaint sought to recover $100,000.00 as either a fraudulent conveyance (federal

and California law) or as an avoidable preference.   On May 17, 2010, after a court trial, this bankruptcy court entered judgment for Gary Farrar, the Chapter 7 Trustee, in this Adversary Proceeding and against the law firm Warda & Yonano in the amount of $100,000.00.[1]  The court also entered judgment for all of the other Defendants, and against the Plaintiff-Trustee, denying any other relief.

The bankruptcy court determined that the $100,000.00 payment received by W&Y in December 2006 constituted a preference paid to an insider under 11 U.S.C. 547 and a fraudulent conveyance pursuant to 11 U.S.C. § 548.   The bankruptcy court's Findings of Fact and Conclusions of Law were stated orally on the record.[2]

The judgment was appealed to the Bankruptcy Appellate Panel, which reversed the court's determination that W&Y was an insider, and thereon reversed the judgment for Plaintiff-Trustee that the $100,000.00 constituted an avoidable preference pursuant to 11 U.S.C. § 547.  The Bankruptcy Appellate Panel also reversed the court's determination that the payments constituted a fraudulent conveyance, stating that the bankruptcy court had not made a determination as to the amount of the fraudulent conveyance.   The Panel also reversed the bankruptcy court's determination that W&Y was an "initial transferee" as defined by 11 U.S.C. § 550.   *Warda & Yonano, LLP v. Farrar*, BAP No. EC-10-1191, 2011 Bankr. LEXIS 1493 (B.A.P. 9th Cir. 2011).

The Plaintiff-Trustee appealed the Bankruptcy Appellate Panel

---

[1]   Dckt. 39.

[2]   Transcript of Trial, Pgs 165-181, Dckt. 44 ("TT").

decision to the Ninth Circuit Court of Appeals.  The Ninth Circuit affirmed the Bankruptcy Appellate Panel on the issue of W&Y not being insiders (affirming the denial of relief pursuant to 11 U.S.C. § 547), but reversed the Bankruptcy Appellate Panel on the issue of whether the bankruptcy court made a determination that the payments constituted a fraudulent conveyance and that W&Y was not an initial transferee of a fraudulent conveyance.  *Farrar v. Warda & Yonano, LLP*, 549 Fed. Appx. 648, 2013 U.S. App. LEXIS 24629 (9th Cir. 2013).  The Ninth Circuit Court of Appeals issued a Mandate that the case be remanded to the bankruptcy court to make further findings as to the amount of the fraudulent conveyance. The Bankruptcy Appellate Panel ordered the matter remanded to the bankruptcy court for the additional findings.

## ADDITIONAL FINDINGS OF FACT AS TO AMOUNT
## OF THE FRAUDULENT CONVEYANCE

The bankruptcy court made a determination in this Adversary Proceeding that the fraudulent conveyance arose under 11 U.S.C. § 548 and not under California Civil Code §§ 3439.04 and 349.05. TT pg. 1806-15.  The court determined that there was a fraudulent conveyance pursuant to § 548(a)(1)(B)(i) and (ii)(I).[3]

The only witness testifying was Michael Warda ("Warda"), a partner of W&Y and the attorney representing Bella Vista prior to and in the Chapter 7 bankruptcy case filed on July 30, 2007.[4] Warda testified that in December 2006, a check in the amount of

---

[3]  TT 169:5 - 171:25, 172:10-17, 175:3-18, 178:4-23.

[4]  Bankr. E.D. Cal. 07-90770.

3

1  $100,000.00 made payable to Bella Vista was delivered to W&Y.[5]  The
2  check was deposited by W&Y by, or at the direction of, Warda into
3  the W&Y client trust account.[6]

4      By correspondence dated June 12, 2008, Warda stated that the
5  $100,000.00 was deposited in the W&Y client trust account on
6  December 21, 2006, and then released to W&Y to pay fees owed by
7  Bella Vista to W&Y, as wells as fees owed by the related entities
8  JCW and JCW-Cypress.[7]  When deposited, the monies owed W&Y for
9  legal services provided to Bella Vista was less than $100,000.00.[8]
10  Attached to Exhibit 2 are copies of W&Y invoices for the Bella
11  Vista account and the other related entity accounts.  The amounts
12  owed to W&Y by Bella Vista as of December 31, 2006 (the month the
13  $100,000.00 was received at W&Y) as computed from the Exhibit 2
14  Invoices total $18,963.01.

15      In his letter of June 12, 2008, Warda states that of the
16  $100,000.00, approximately $23,182.17 was used directly to pay the
17  invoices for attorneys' fees owed by Bella Vista to W&Y.  No
18  attempt was made at trial to clearly compute the amount stated on
19  the invoices or more specifically compute the approximate amount
20  that was the subject of Warda's testimony.  Exhibit 3, admitted
21  over the Defendants' objection, was presented as invoices for
22  additional work for the JCW and JCW-Cypress related entities, done
23  possibly for Bella Vista.  The testimony at trial was that Warda

25     [5]  TT 22:20-25, 21:1-7.
26     [6]  TT 23:8-12, 24:15-19.
27     [7]  Exhibit 2.
28     [8]  TT 32:12-25, Warda's testimony confirming that the information
in Exhibit 2 is accurate.

4

could not identify what portion of the balance shown on these invoices was for Bella Vista and what was for the related entities. All of the descriptions for the services provided are redacted from Exhibit 3, with just dates, billed amounts, and balance due totals shown on the invoices. Additionally, most of the billing for the unidentified work listed on the Exhibit 3 Invoices is during the period after the July 30, 2007 bankruptcy filing by Bella Vista.

After paying the approximate $23,182.17 owed by Bella Vista to W&Y, the balance of the $100,000.00 was disbursed to W&Y to pay the JCW and JCW-Cypress related entities' outstanding invoices for legal services provided by W&Y.[9] Warda further testified that when he deposited the check made payable to Bella Vista into the W&Y trust account, Warda identified it on the W&Y books as monies deposited for JCW-Cypress.[10]   Warda was not instructed by a representative of Bella Vista to identify the deposit as being for JCW-Cypress, and Warda made that decision concerning the Bella Vista check on his own authority.[11]

The Chapter 7 bankruptcy case for Bella Vista was filed on July 30, 2007.  Invoice 12671 identifies additional post-December 31, 2006 work done by W&Y for Bella Vista (Preston Pipelines) through July 31, 2007.[12]  The fees for this additional work total $12,485.16.  For the Bella Vista (Ross Carroll) Invoice 12670 fees for additional work done during the period after

---

[9]   Warda testimony at trial, TT 33:1-5; 39:1-11.

[10]   TT 33:6-13.

[11]   TT 33:2-14.

[12]   Exhibit 2.

5

December 31, 2006, through the July 30, 2007 Chapter 7 bankruptcy
filing by Bella Vista total $3,937.50.[13]

**Determination of Fraudulent Conveyance Amount
Received by Warda & Yonano**

Of the $100,000.00 received by Bella Vista, only $23,182.17
paid the obligation owed by the Debtor to W&Y.  Though the court's
computation of the invoice balances total only $18,963.01 and
reference was made at trial to the invoice amount not equaling
Warda's recollection of the approximate amount, the court gives W&Y
the benefit of the doubt because Plaintiff, Defendant, and Warda
repeatedly used the $23,182.17 amount in stating their respective
cases at trial.  Based on Warda's testimony and other evidence
presented, the remaining $76,817.83 of Bella Vista's monies were
disbursed to W&Y to pay attorneys' fees bills of separate, related
entities.

After receiving the $100,000.00 payment from Bella Vista and
applying it to outstanding bills for Bella Vista and the JCW and
JCW-Cypress related entities, W&Y continued to do additional work
for Bella Vista.  The Invoices presented as Exhibit 2 reflect that
an additional $16,422.66 in work was billed by W&Y to the Bella
Vista accounts.  The testimony provided by Warda is that he,
without instruction from Bella Vista or the related entities,
determined how the $100,000.00 should be deposited in the trust
account and how it should be allocated to Bella Vista and the

---

[13]  Id.

6

1 related entities.[14]  No clear accounting of the application of the
2 monies was provided at trial.

3      It is not beyond rational expectation that Warda and W&Y,
4 having received $100,000.00 that they applied to various accounts,
5 would then continue to do additional work for Bella Vista –
6 treating a portion of the monies used to pay off the related
7 entities' unpaid invoices as if they had held it to pay the new
8 work being done over the next seven months before filing bankruptcy
9 for Bella Vista.   Since Warda had the authority to deposit,
10 identify, and then disburse the Bella Vista monies as he determined
11 (without instruction or direction from another representative of
12 Bella Vista or the related entities), he could just as well have
13 set aside a portion to pay the upcoming bills.   Though he did not
14 do so clearly or document such, the court again gives W&Y the
15 benefit of the doubt that they continued to do additional Bella
16 Vista work, to the extent shown on the Invoices presented as
17 Exhibit 2, in reliance on having received the $100,000.00 to first
18 pay Bella Vista's bills to W&Y.

19      The court determines that of the $100,000.00 received by W&Y
20 from the $100,000.00 check made payable to Bella Vista, $39,604.83
21 was for legal services provided by W&Y to Bella Vista, and
22 $60,395.17 was for services provided not to Bella Vista, but
23 related, non-bankruptcy debtor entities.  In being paid $60,395.17

25 [14] Though not clearly articulated by this court when making its
26 original findings of fact and conclusions of law, Warda's authority to
   receive, deposit to a client who was not the payee on the check, and
   then allocate the $100,000.00 to the outstanding bills of Bella Vista
27 and the related entities weighed heavy in the determination that W&Y
   were insiders for purposes of 11 U.S.C. § 547.  That determination now
28 works in favor of W&Y concerning how they did, or could have,
   controlled the monies of Bella Vista.

1  for W&Y legal services provided to JCW and JCW-Cypress, W&Y
2  received a fraudulent conveyance from Bella Vista.

3      Based on the evidence presented at trial, this bankruptcy
4  court finds that W&Y received the fraudulent conveyance in the
5  amount of $60,395.17.  These Supplemental Findings are in addition
6  to, and do not replace, alter, or change the prior Findings of Fact
7  and Conclusions of law made by this court after trial.

8  **Entry of Corrected Judgment**

9      To provide for an accurate judgment after remand, the
10 bankruptcy court shall issue a "Corrected Judgment After Remand"
11 setting forth the fraudulent conveyance amount of $69,395.17.
12 Dated: June  ⫽  , 2014

RONALD H. SARGIS, Judge
United States Bankruptcy Court

8

# Instructions to Clerk of Court
### Service List - Not Part of Order/Judgment

The Clerk of Court is instructed to send the Order/Judgment or other court generated document transmitted herewith to the parties below.  The Clerk of Court will send the Order via the BNC or, if checked _____, via the U.S. mail.

      **Debtor**(s), **Attorney for the Debtor**(s), **Bankruptcy Trustee** (if appointed in the case), **and** __XX____ Other Persons Specified Below:

Office of the U.S. Trustee
Robert T. Matsui United States Courthouse
501 I Street, Room 7-500
Sacramento, CA 95814

Clifford W. Stevens
P.O. Box 20
Stockton, CA 95201-3020